IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KENNETH LAMAR BRYSON,<br><br>      Defendant. | CRIMINAL INDICTMENT<br><br>NO. 1:13-CR-09-ODE |

## FINAL REPORT AND RECOMMENDATION

Defendant Kenneth Lamar Bryson ("Defendant") is charged with one count of being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g); one count of possessing with intent to distribute cocaine base, in violation of Title 21, United States Code, Sections 841(a) and (b); and one count of possessing a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).  Pending before this court are Defendant's Oral Motion to Suppress, made on February 1, 2013, and his perfected Motion to Suppress Search and Seizure and Motion to Suppress Statements  [Docs. 14 and 15].

Defendant asks the Court to suppress evidence and statements that were obtained after a traffic stop and subsequent search of his car on August 9, 2012. An evidentiary hearing on this motion was held before me on May 9, 2013.  All transcript references

AO 72A
(Rev.8/82)

are to the transcript of that hearing. For the reasons discussed below, I recommend that Defendant's motions to suppress be **DENIED**.

**I.  FACTS**

On August 9, 2013, Gregory Spruiell, a Georgia State Patrol Trooper, was on a drunk driving patrol in Fulton County when he observed Defendant's black Nissan Altima driving north on Roswell Road at approximately 3:07 a.m. (Tr. 4, 7-8). The Nissan was in the right lane of the two northbound lanes. (Tr. 73). Trooper Spruiell testified that as he followed the Nissan, he observed that it failed to maintain its lane. (Tr. 13). He activated his video camera and continued trailing the Nissan. (Id.). Trooper Spruiell testified that after he turned on his camera, he again observed the Nissan fail to maintain its lane. (Id.). Trooper Spruiell then activated his blue lights and stopped the Nissan. (Tr. 14).

As Trooper Spruiell was speaking with Defendant after the stop, the trooper smelled the odor of alcohol on Defendant's breath and a strong smell of marijuana coming from the inside of the vehicle. (Tr. 18). In response to the trooper's questions, Defendant said that he did not use marijuana, but he believed that his passenger probably had some marijuana in her possession. (Tr. 19, 99). Trooper Spruiell than spoke to the passenger who stated that she had smoked some marijuana at work before

2

meeting Defendant, but she did not have or know of any marijuana in the car. (Tr. 19). Trooper Spruiell then searched the vehicle and recovered a firearm, cocaine, and a large amount of currency from the vehicle. (Tr. 20-23, 29).

Additional facts are discussed in context below.

## II. DISCUSSION

### A. Probable Cause of Failure to Maintain Lane

A traffic stop constitutes a "seizure" for purposes of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). A traffic stop will be found to be constitutional if the officer has probable cause to believe that a traffic violation occurred. United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008). An officer also may make an investigatory stop of a vehicle if he has a reasonable, articulable suspicion that the defendant is engaged in criminal activity. Id.; United States v. Powell, 222 F.3d 913, 917 (11th Cir. 2000).

The primary issue presented in Defendant's motion to suppress is whether Trooper Spruiell had probable cause to stop Defendant's vehicle for failure to maintain a lane. The relevant statute, O.C.G.A. § 40-6-48(1), states that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from

3

such lane until the driver has first ascertained that such movement can be made with safety."

In describing what he observed that caused him to conclude that Defendant's vehicle had violated this statute, Trooper Spruiell testified that on a straightaway past a church, he initially saw the vehicle fail to maintain its lane on the left. (Tr. 13). After he activated his camera, the Nissan swung "a little wide" as it was negotiating a curve to the right in the road, so that the left-side tires "were practically driving over" the dashed white line separating the two northbound lanes. (Tr. 14-15). Trooper Spruiell acknowledged that the left tires were not visible on the video recording. (Tr. 16). However, he maintained that the visible large space on the right of the vehicle (between the vehicle and the solid fog line on the right), and the inability to see the center line on the video, demonstrated that the vehicle's left tires were at least touching the center line between the two north-bound lanes. (Id.).

Trooper Spruiell's testimony was not entirely clear as to whether the Nissan's left tires entirely crossed into the left lane or whether the tires merely touched the white dashed line between the lanes. In his direct testimony, Spruiell stated that, during the second lane violation, the left side tires were "practically driving over" the dividing line—suggesting that the tires were on the line but did not cross completely into the

4

other lane. (Tr. 15). On cross-examination, Trooper Spruiell indicated that both of the tires crossed the line entirely before Defendant drove back into the right-hand lane. (Tr. 49). In response to further questioning from the Court, he estimated that the tire crossed over the line by approximately six inches, but he then clarified that only part of the tire crossed into the other lane. (Tr. 73-74).

Trooper Spruiell testified that Defendant was not driving erratically, did not appear to be speeding, and was not weaving within the lane. (Tr. 72, 75-76). Defendant did not pose a danger to himself or to other drivers on the road. (Tr. 48-49). Defendant testified that he had not been weaving or drifting and had no recollection of having crossed over the white line. (Tr. 97).

Based on the testimony and the video recording, I conclude that several inches of the left-side tires of Defendant's vehicle touched the center dashed line between the two north-bound lanes, but that the wheels did not entirely cross over the line. I also conclude that it was practicable for Defendant to drive entirely within his lane. The question then becomes whether Defendant's actions gave the trooper a basis to stop the vehicle for violation of O.C.G.A. § 40-6-48(1).

In most of the cases where the Georgia Court of Appeals has interpreted § 40-6-48(1), the defendant engaged in some additional conduct apart from simply

5

touching the lane lines. However, several Georgia cases cite the fact that the defendant touched the lane line as one factor that justified a traffic stop under § 40-6-48(1).

The most recent case addressing this issue is Acree v. State, 319 Ga.App. 854, 737 S.E.2d 103 (2013). Acree appealed the trial court's denial of a motion to suppress, arguing that law enforcement did not have probable cause to stop his vehicle. Id. at 854, 737 S.E.2d at 104. The evidence showed that a patrol officer had observed Acree's tires cross the white fog lines on the side of the road. Id. Acree's car then veered to the left, touching the center line, before drifting back and touching the fog line again. Id. at 855, 737 S.E.2d at 105. The Georgia Court of Appeals held that the defendant's weaving across the lane justified a traffic stop under O.C.G.A. § 40-6-48(1). Id. at 855-56, 737 S.E.2d at 105.

The Georgia Court of Appeals also addressed O.C.G.A. § 40-6-48(1) in Polk v. State, 305 Ga.App. 677, 700 S.E.2d 839 (2010). There, an officer observed Polk's vehicle make an abrupt turn out of a subdivision. Id. at 678, 700 S.E.2d at 840. Polk drove on top of the fog line, then drifted back across the lane, "breaking the [plane] of the outermost edge of the center line." Id. (internal quotation marks omitted, alteration in original). Polk's vehicle "struck at least one lane marker before drifting back over to, and on top of, the fog line." Id. The Court of Appeals held that Polk's repeated

6

driving on the lane lines and his weaving within his own lane justified a traffic stop under O.C.G.A. § 40-6-48(1). Id. at 678-79, 700 S.E.2d at 841.

A third case discussing O.C.G.A. § 40-6-48(1) is Allenbrand v. State, 217 Ga.App. 609, 458 S.E.2d 382 (1995). The evidence showed that Allenbrand weaved within his lane, drove "onto the center line," and then "jerk[ed] back" into his own lane of travel. Id. at 609, 458 S.E.2d at 383 (internal quotation marks omitted). He repeated that maneuver several times. Id. The last time, Allenbrand's tires actually crossed into the adjoining lane. Id. at 609-10, 458 S.E.2d at 383. At that point, the officer pulled him over. Id. Allenbrand was convicted of driving under the influence, but was acquitted of failure to maintain a lane. Id. The Court of Appeals held that the traffic stop was lawful because the officer who observed Allenbrand's weaving had probable cause to believe that he had failed to maintain a lane. Id. at 610, 458 S.E.2d at 383-84.

The cases cited above involved some conduct in addition to simply touching a lane line. Acree and Allenbrand entirely crossed the lane lines at one point, and Polk was weaving back and forth within the lane. However, all three of those cases suggest that touching the lane line is a factor that can support probable cause that a driver has violated O.C.G.A. § 40-6-48(1).

7

Bryson cites <u>Veal v. State</u>, 273 Ga.App. 47, 614 S.E.2d 143 (2005), for the proposition that defendant must either cross a lane line or drive erratically within his own lane in order to violate O.C.G.A. § 40-6-48(1). The Court of Appeals observed in <u>Veal</u> that "[i]t is well established that weaving, both out of one's lane and within one's own lane, particularly when combined with other factors, may give rise to reasonable articulable suspicion on the part of a trained law enforcement officer that the driver is violating the DUI laws." <u>Id.</u> at 49, 614 S.E.2d at 145. However, the Court of Appeals did not state that weaving or entirely crossing a lane line are the only ways that a defendant may violate § 40-6-48(1). The Court of Appeals did not have occasion in that case to decide whether merely touching a lane line is enough to violate the statute.

The government's brief cites to <u>Steinberg v. State</u>, 286 Ga.App. 417, 650 S.E.2d 268 (2007). In that case, the Georgia Court of Appeals held that "weaving without reason into nearby lanes violates O.C.G.A. § 40-6-48(1) and justifies a stop," even if the car does not pose a danger to any other traffic on the road. <u>Id.</u> at 419, 650 S.E.2d at 270 (internal quotation marks omitted). In <u>Steinberg</u>, however, the Court specifically found that the defendant's tires entirely crossed the center line of the road. <u>Id.</u> at 418, 650 S.E.2d at 270 (noting that the defendant "twice crossed the centerline."). Thus, <u>Steinberg</u> is not entirely on point with this case. However, <u>Steinberg</u> does support the

8

government's contention that Defendant's actions need not have posed a danger to other vehicles in order for the stop to be justified.

Notably, the U.S. District Court for the Southern District of Georgia recently denied a motion to suppress in a case where a defendant was stopped after driving on, but not over, the center line. United States v. Diaz-Fonseca, No. CR 112-242, 2013 WL 3147903, at *2 (S.D. Ga. June 19, 2013). Citing to Acree, the Magistrate Judge's Report and Recommendation concluded that "under Georgia law, an officer has probable cause to believe a violation of O.C.G.A. § 40-6-48(1) has occurred, and he may initiate a traffic stop, when a vehicle drives on to the center line of the road." Id. at *6. The District Court adopted the report and recommendation and denied the motion to dismiss. Id. at *1.

Many other states' failure-to-maintain-a-lane laws use language that is very similar, if not identical, to Georgia's statute. Cases interpreting those other law s have reached conflicting results as to whether a defendant's driving onto, but not over, a lane line is sufficient to justify a traffic stop. In United States v. Colin, 314 F.3d 439 (9th Cir. 2002), the Ninth Circuit concluded that merely touching a lane line is not enough to violate California Vehicle Code § 21658(a), which states that "[a] vehicle shall be driven as nearly as practical entirely within a single lane . . ." In that case, the

9

defendants' car tires touched the solid white fog line for approximately ten seconds. Id. at 441. The defendants then moved into the left lane and touched the center line for ten seconds before moving back to the right lane. Id.

The Ninth Circuit held that the defendants' conduct did not amount to a violation of § 21658(a). Id. at 443-45. The Ninth Circuit noted that the statute only requires a car to be driven as "nearly as practical" within a single lane. Id. at 444. The Ninth Circuit observed that the defendants "touched the lines only twice, both times before making safe lane changes" and concluded that "[i]t is reasonable that a driver with no cars abreast of him might veer slightly within his lane or over the lane line in the course of making a lane change to ensure that it is safe to do so." Id. at 445.

A pair of district court cases have reached the opposite result. In United States v. Williams, Criminal Case No. 3:13MJ137, 2013 WL 1975669 (E.D. Va. May 13, 2013), the arresting officer noticed the defendant's vehicle "driving over, but not crossing, the right fog line for approximately five feet." Id. at *1. The defendant's car then swerved back and forth, touching the fog line several more times. Id. at *2, *7.

The district court upheld the lawfulness of a traffic stop under these circumstances, concluding that the officer had a reasonable suspicion that the defendant had failed to maintain a single lane of travel as required by Code of Virginia §

46.2-804. Id. at *5-*7.  The court noted that the statute required a vehicle to be "driven as nearly as is practicable entirely <u>within</u> a single lane," and observed that the Code of Virginia defines a lane of travel as "the area <u>between</u> the boundary lines . . . on each side of the lane."  Id. at *6 (internal quotation marks omitted, emphasis in original). The Court concluded that "a driver who drives his vehicle on the boundary lines violates § 46.2-804, regardless of whether the driver actually crosses over the boundary lines."  Id.

Using similar reasoning, the U.S. District Court for the District of New Mexico has determined that simply touching a lane line constitutes failure to maintain a lane under New Mexico law.  <u>United States v. Bassols</u>, 775 F.Supp.2d 1293, 1296, 1298-1303 (D. N.M. 2011) ("[A] driver who drives on the line or stripe dividing a lane of traffic from another lane or on the line or stripe that separates a lane from the shoulder has failed to drive 'as nearly as practicable entirely within a single lane.'") (emphasis omitted).

Although courts in different states have reached various conclusions with respect to this issue, the Georgia cases interpreting O.C.G.A. § 40-6-48(1) suggest that touching a lane line can violate the statute.  See <u>Acree</u>, 319 Ga.App. at 855-56, 737 S.E.2d at 105; <u>Polk</u>, 305 Ga.App. at 678-79, 700 S.E.2d at 840-41; <u>Allenbrand</u>, 217

11

Ga.App. at 609-10, 458 S.E.2d at 383-84.  In addition, the statute's requirement that a driver stay "entirely within a single lane" suggests that a driver can violate the statute by driving on the dividing line between the lanes.  Based on the statutory wording, my analysis of the cases, particularly the Georgia cases, and my findings of fact, I conclude that Trooper Spruiell had probable cause to stop Defendant for a violation of O.C.G.A. § 40-6-48(1).

> **B.   Reasonable Suspicion That Defendant was Driving Under the Influence of Alcohol or Drugs**

The government also argues that the traffic stop of Bryson's car was lawful because Trooper Spruiell had a reasonable, articulable suspicion that Bryson was driving under the influence of alcohol.  Trooper Spruiell testified that at 3:07 a.m., the time Defendant was stopped, there would be a "higher probability of encountering people that are drinking," due to it being "typical alcohol serving hours for clubs." (Tr. 7-8).  He also testified that it was common for drivers who are under the influence of drugs or alcohol to fail to maintain their lanes. (Tr. 82).

An officer may stop a driver if the officer has a reasonable suspicion based on specific articulable facts that the driver is under the influence of alcohol.  United States v. Smith, 448 F.App'x 936, 938 (11th Cir. 2011).  Here, Trooper Spruiell observed Bryson's car drive onto the dividing line between the two north-bound lanes on two

12

separate occasions at 3:07 a.m. Based on that fact, he could reasonably have suspected that Bryson was driving under the influence, and was justified in making an investigatory stop to confirm or dispel his suspicion.

### C.  Probable Cause to Search Defendant's Car

Officers may conduct a warrantless search of a vehicle if they have probable cause to believe that it contains contraband. Maryland v. Dyson, 527 U.S. 465, 467, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999). The Eleventh Circuit has held that probable cause to search exists once officers have detected the odor of marijuana. United States v. Tobin, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc). Here, Trooper Spruiell smelled marijuana coming from the inside of the vehicle, and Defendant told the trooper that he believed that his passenger probably had some marijuana in her possession. (Tr. 18-19, 99). Additionally, the passenger advised Spruiell that she had been smoking marijuana at work. (Tr. 19). These facts gave Trooper Spruiell probable cause to search the vehicle for marijuana.

### D.  Defendant's Motion to Suppress Statements Should be Denied as Moot

Bryson also has moved to suppress all statements that he made after he was handcuffed. He contends that these statements were the product of a custodial

interrogation and that he never was read his Miranda[1] warnings. However, the government has agreed that it will not use, in its case-in-chief, the statements that Defendant seeks to suppress. (Doc. 28, p. 7, 20-21). Therefore, Defendant's Motion to Suppress Statements should be denied as moot.

### III. CONCLUSION

For reasons discussed above, I **RECOMMEND** that Defendant's oral motion to suppress dated February 1, 2013, and his Motion to Suppress Search [Doc. 14] be **DENIED,** and that his Motions to Suppress Statements [Doc. 15] be **DENIED AS MOOT**.

There are no other pending matters before me, and I am aware of no problems relating to the scheduling of this case for trial. It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

It is so **ORDERED** and **RECOMMENDED**, this   11th   day of September, 2013.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

AO 72A (Rev.8/82)