FILED IN CHAMBERS
U.S.D.C. - Atlanta

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OCT 2 1 2013

By: James N. Hatten, Clerk
Deputy Clerk

UNITED STATES OF AMERICA

v.

KENNETH LAMAR BRYSON

CRIMINAL CASE NO.

1:13-CR-09-ODE-GGB

ORDER

This criminal case comes before the Court on objections [Doc. 37] filed by Defendant Kenneth Lamar Bryson ("Defendant") to a Report and Recommendation ("R&R") entered on September 11, 2013, by United States Magistrate Judge Gerrilyn G. Brill [Doc. 31]. Magistrate Judge Brill recommended this Court deny Defendant's motions to suppress evidence from a warrantless traffic stop and subsequent search of Defendant's vehicle and to suppress statements made by Defendant following his arrest [Docs. 14 and 15],[1] and certified this case ready for trial [Doc. 31 at 14].

For the following reasons, Defendant's objections to the R&R [Doc. 37] are OVERRULED, and the R&R [Doc. 31] is ADOPTED. As a result, Defendant's oral motion to suppress dated February 1, 2013 is DENIED. Defendant's perfected motion to suppress evidence from the traffic stop [Doc. 14] is also DENIED, and his motion to suppress statements made in custody [Doc. 15] is DENIED AS MOOT.[2]

_____

[1]Defendant's oral motion to suppress dated February 1, 2013 was perfected on February 15, 2013 [see Docs. 14 and 15].

[2]Also pending is Defendant's motion for extension of time to file brief in support of motions to dismiss, filed on June 14, 2013 [Doc. 23]. There was no opposition to this motion and,

**I.   Background**[3]

On August 9, 2012, Gregory Spruiell ("Trooper Spruiell" or "Spruiell"), a Georgia State Patrol Trooper, was on a drunk driving patrol in Fulton County when he observed Defendant's black Nissan Altima driving north on Roswell Road at approximately 3:07 a.m. (Tr. 4, 7-8).[4]   The Nissan was in the right lane of the two northbound lanes (Tr. 73).   Trooper Spruiell testified that, as he followed the Nissan, he observed that it failed to maintain its lane (Tr. 13).[5]

Spruiell activated his video camera and continued trailing the Nissan (Id.).   He testified that after he turned on his camera, he again observed the Nissan fail to maintain its lane (Id.).   Trooper Spruiell then activated his blue lights and stopped the Nissan (Tr. 50, 73).

As Trooper Spruiell was speaking with Defendant after the stop, Spruiell smelled the odor of alcohol on Defendant's breath and a strong smell of marijuana coming from the inside of the

---

obviously, Defendant has filed the motions to dismiss which were the subject of the motion.   Accordingly, the motion [Doc. 23] is GRANTED NUNC PRO TUNC.

[3]Magistrate Judge Brill held an evidentiary hearing on the instant motions on May 9, 2013.   The Court adopts the facts as found by Magistrate Judge Brill in the R&R, noting and addressing any objections asserted by Defendant to those facts as the Court proceeds.

[4]References to the evidentiary hearing transcript are cited as "Tr. at" page number.   The transcript is Doc. 22 on the docket.

[5]There is some inconsistency concerning Trooper Spruiell's testimony as to whether the Nissan's left tires actually crossed into the left lane or whether they merely touched the white dashed line between the lanes [Tr. 15, 49, 73-74].

vehicle (Tr. 18). In response to Spruiell's questions, Defendant said that he did not use marijuana, but he believed that his passenger probably had some marijuana in her possession (Tr. 18-19, 99). Trooper Spruiell then spoke to the passenger who stated that she had smoked some marijuana at work prior to meeting Defendant, but she did not have or know of any marijuana in the car (Tr. 19). Spruiell then searched Defendant's car and recovered a firearm, cocaine, and a large amount of currency (Tr. 20-23, 29).

On January 8, 2013, Defendant was charged with three counts: (1) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g); (2) possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) [Doc. 1].

On February 15, 2013, Defendant perfected his oral motion to suppress evidence and statements obtained as a result of the traffic stop and subsequent search of his car [Docs. 14 and 15]. Magistrate Judge Brill held an evidentiary hearing on the motions on May 9, 2013.

At the hearing, both Trooper Spruiell and Defendant testified to the events of that night. In addition to the facts stated above, Spruiell testified that Defendant was not driving erratically, did not appear to be speeding, and was not weaving within his lane (Tr. 72, 75-76). Defendant testified that he had not been weaving or drifting, and that he had no recollection of having crossed over the white line (Tr. 97).

3

## II.  **Magistrate Judge Brill's Recommendations**

In her R&R filed September 11, 2013, Judge Brill recommended that Defendant's oral motion to suppress dated February 1, 2013 and his motion to suppress the search of his vehicle [Doc. 14] be denied, and that his motion to suppress his statements [Doc. 15] be denied as moot.

Judge Brill first concluded--based on her own review of the video recording from Trooper Spruiell's camera and on Spruiell's testimony at the hearing--that several inches of the left-side tires of Defendant's vehicle touched the center dashed line between the two north-bound lanes, but that the wheels did not entirely cross over the line.  Judge Brill further determined that it was practicable for Defendant to drive entirely within his lane [Doc. 31 at 5].

Judge Brill next addressed the dispositive question in the instant case--i.e., whether Defendant's actions of merely touching the lane line gave Spruiell a basis to stop Defendant's vehicle for violation of the failure-to-maintain-a-lane statute at issue, O.C.G.A. § 40-6-48(1).  After analyzing several Georgia cases interpreting O.C.G.A. § 40-6-48(1), Judge Brill noted that touching a lane line is one factor, in addition to some other conduct, that justifies a traffic stop under the statute [Doc. 31 at 6-7].

Relying primarily on the statutory text and three Georgia cases applying the statute,[6] Judge Brill ultimately determined

_____

[6]See Acree v. State, 319 Ga. App. 854 (Ga. Ct. App. 2013); Polk v. State, 305 Ga. App. 677 (Ga. Ct. App. 2010); and Allenbrand v. State, 217 Ga. App. 609 (Ga. Ct. App. 1995).

4

that a driver can violate O.C.G.A. § 40-6-48(1) by touching the dividing line between the lanes. Accordingly, she concluded that Trooper Spruiell had probable cause to stop Defendant's vehicle for failure to maintain a lane under O.C.G.A. § 40-6-48(1).

In addition, Judge Brill determined that the stop of Defendant's vehicle was justified by Trooper Spruiell's reasonable suspicion that Defendant was driving under the influence. She based that conclusion on Trooper Spruiell's observations of Defendant's car touching the line between the two north-bound lanes on two occasions at 3:07 a.m. and on Spruiell's testimony that there would be a "higher probability of encountering people that are drinking" at that hour [Doc. 31 at 13; Tr. 7-8].

As to the subsequent search of Defendant's car, Judge Brill determined that Trooper Spruiell's probable cause to conduct the search was supported by (1) the smell coming from the inside of Defendant's vehicle; (2) Defendant's statement to the trooper that his passenger probably had some marijuana on her; and (3) the passenger's statement to the trooper that she had been smoking marijuana at work [Doc. 31 at 13].

Finally, Judge Brill recommended that Defendant's motion to suppress his statements be denied as moot because the government had agreed to not use, in its case-in-chief, the statements at issue [Id.].

## III. **Discussion**

### A.   _Standard of Review_

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b), the Court must conduct a de novo review of those portions of the R&R to which Defendant timely and

5

specifically objected.  If there is no specific objection, the Court reviews the R&R for clear error.  Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 2006) (Story, J.)(citing HGI Assocs., Inc. v. Wetmore Printing Co., 427 F.3d 867, 873 (11th Cir. 2005)).

The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by Magistrate Judge Brill. 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59(b)(3); United States v. Raddatz, 447 U.S. 667, 673-74 (1980).  The Court deems Defendant to have waived his right to request review of any portions of the R&R to which he failed to timely and specifically object.  FED. R. CRIM. P. 59(b)(2).

B.  *Defendant's Specific Objections*

Defendant does not object to Magistrate Judge Brill's factual findings that several inches of the left-side tires of Defendant's vehicle touched the center dashed line between the two north-bound lanes and that it was practicable for Defendant to drive entirely within his lane.[7]  Rather, Defendant's sole objection challenges Judge Brill's conclusion that merely touching the center dashed line was sufficient to provide Trooper Spruiell with probable cause to stop Defendant's vehicle for failure to maintain lane in violation of O.C.G.A. § 40-6-48(1) [Doc. 37 at 5].

---

[7]Because Defendant does not challenge Judge Brill's factual findings, the Court reviews these findings only for clear error. Having carefully reviewed Judge Brill's findings of fact, this Court finds no clear error.

C. *Analysis*

"A traffic stop constitutes a 'seizure' within the meaning of the Fourth Amendment's protection against 'unreasonable searches and seizures.'"   United States v. Smith, 448 F. App'x 936, 938 (11th Cir. 2011) *cert. denied*, 133 S. Ct. 1453 (2013)(citation omitted).   However, a traffic stop of a vehicle is constitutional if it is based on probable cause to believe that a traffic violation has occurred or if officers have a "'reasonable, articulable suspicion'" that an individual is engaged in criminal activity.   United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008)(per curiam )(quoting United States v. Powell, 222 F.3d 913, 917 (11th Cir. 2000)).

### 1) Spruiell's Probable Cause as to the Traffic Stop

"[L]aw enforcement 'may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles.'"   United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998)(quoting United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990))).   In the instant case, O.C.G.A. § 40-6-48 furnishes the relevant statutory basis.

O.C.G.A. § 40-6-48 provides:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic . . .
(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

O.C.G.A. § 40-6-48(1).

The Court agrees with Judge Brill that touching the lane line is a factor that may, in combination with other conduct, give rise

to probable cause justifying a traffic stop under O.C.G.A. § 40-6-
48(1). See Acree, 319 Ga. App. at 854-55 (the defendant's tires
touched the centerline, drifted back, and then touched the white
fog lines on the side of the road); Polk, 305 Ga. App. at 841 (the
defendant's car weaved within his lane several times, struck a
lane marker, crossed over the centerline twice, and "broke the
[plane] of the outermost edge of the center line"); Allenbrand,
217 Ga. App. at 609-10 (the defendants' vehicle was weaving within
his lane and onto the center, and "then jerking back into its lane
of travel" several times, and its left tires crossed into the
adjoining lane).⁸

Nevertheless, the Court finds that, in the absence of such
additional conduct, the mere touching of the white dashed line
between two or more clearly marked lanes is insufficient to
support probable cause to believe that a violation of
O.C.G.A. § 40-6-48(1) has occurred.⁹  Because Defendant's conduct

---

⁸The Court notes that the propriety of the traffic stop in
numerous Georgia Court of Appeals cases turned on whether the
officer had a reasonable suspicion, rather than probable cause, to
initiate the traffic stop.  See Acree, 319 Ga. App. at 855
(applying the reasonable suspicion standard); Polk, 305 Ga. App.
at 679 (same); Semich v. State, 234 Ga. App. 89, 91-92 (Ga. Ct.
App. 1998); cf. Allenbrand, 217 Ga. App. at 610 (discussing the
officer's probable cause to stop the vehicle).

⁹The Court deems the cases cited by both Defendant and the
government interpreting other states' failure-to-maintain-a-lane
laws unhelpful in the Court's application of O.C.G.A. § 40-6-48(1)
to the facts of this case.  In addition, the statute's scant
legislative history does not enable the Court to discern the
precise contours of the conduct criminalized under the statute;
cf. Semich, 234 Ga. App. at 92 (discussing the gradual lessening
of the degree of intoxication and the criminalizing of a broader
scope of behavior under O.C.G.A. § 40-6-391, known as the "DUI
statute").

in the instant case involved nothing more than touching the lane line on two occasions, Trooper Spruiell lacked probable cause, at the time he initiated the traffic stop, to believe a violation of O.C.G.A. § 40-6-48(a) had been committed.

**2) Spruiell's Reasonable Suspicion as to the Traffic Stop**

Notwithstanding the Court's conclusion that the traffic stop in the instant case was not supported by probable cause, the Court finds that Trooper Spruiell was justified in stopping Defendant's car based on Spruiell's reasonable suspicion that Defendant was driving under the influence. "It is well-established . . . that a police officer 'may conduct a brief investigative stop of a vehicle . . . if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct.'" Smith, 448 F. App'x at 938 (quoting United States v. Lopez-Garcia, 565 F.3d 1306, 1313 (11th Cir.), cert. denied, -- U.S. --, 130 S. Ct. 1012 (2009)).

"In determining whether reasonable suspicion exist[s], we look at the totality of the circumstances from the perspective of an objectively reasonable police officer." Id. at 938 (internal references omitted). The standard of "reasonable suspicion" requires "considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Sokolow, 490 U.S. 1, 7 (1989); United States v. Benitez-Macedo, 129 F. App'x 506, 511 (11th Cir. 2005).

The conduct giving rise to the reasonable suspicion does not have to be a violation of the law. Semich, 234 Ga. App. at 91. Thus, "even if the defendant's actions '[do] not amount to a per se traffic violation, under the totality of the circumstances

9

. . . [the officer has] a reasonable, articulable suspicion that [the defendant] [i]s committing a traffic offense.'" Id. at 91-92 (quoting Roberson v. State, 230 Ga. App. 179, 180 (Ga. Ct. App. 1998).

The Court finds Semich instructive.   There, an officer observed the defendant's vehicle weave within its lane at 1:30 a.m. after abruptly turning around in an apparent effort to avoid police.   The court in Semich considered whether the defendant's actions, while not a traffic offense per se, justified a reasonable suspicion that the defendant had engaged in criminal conduct.

Noting that "smaller amounts of alcohol ingestion [that are criminalized under Georgia law] are behaviorally manifested by smaller deviations from the norm," the court held that the police are justified in stopping drivers who engage in driving behavior that deviates from the norm, "even if it is simply weaving within a lane."   The court also emphasized that the officer's reasonable suspicion was buttressed by the late hour during which the events unfolded--"a time when drunk driving is more common than during the day."[10]  Id. at 92.

Although Defendant did not weave within his lane, Trooper Spruiell testified that he observed the left-hand tires of Defendant's vehicle touching the dashed white line separating the two northbound lanes on two occasions at 3:07 a.m.   Based on (1)

---

[10]Although the defendant in Semich turned around to avoid police, the court's analysis of the officer's reasonable suspicion in that case and the propriety of traffic stops in general rested primarily on officers' observations of deviations, albeit minor, from the norm.  See Semich, 234 Ga. App. at 91-92.

these observations; (2) Spruiell's understanding that the hours
between 9 p.m. and 5 a.m. are "typical alcohol serving hours for
clubs"; and (3) his experience that drivers who are under the
influence commonly fail to maintain their lanes, Trooper Spruiell
suspected that Defendant was driving while intoxicated [Tr. 7-8,
82].[11]

The Court finds that Trooper Spruiell's suspicion was
supported by specific articulable facts sufficient to cause an
objectively reasonable officer to determine that Defendant was
driving under the influence.   Therefore, Trooper Spruiell was
justified in initiating the traffic stop of Defendant's vehicle.[12]

### 3) Remaining Issues

Defendant does not raise any specific objections to Judge
Brill's conclusions concerning Trooper Spruiell's probable cause
to search Defendant's vehicle.   Similarly, Defendant does not
object to Judge Brill's recommendation that Defendant's motion to
suppress the statements he made in custody be denied as moot.

---

[11]Trooper Spruiell also testified that the vast majority of
the approximately 300 traffic stops he had conducted as a trooper
in the DUI task force of the Georgia State Patrol were initiated
on suspicion of DUI [Tr. at 4-5].

[12]The Court's finding is consistent with the ultimate
conclusion reached by the court in United States v. Diaz-Fonseca,
No. CR 112-242, 2013 WL 3147903 (S.D. Ga. June 19, 2013).   There,
the court found that the defendant's drifting towards the center
line and driving on it for a couple of seconds justified the
initial traffic stop.   While the court noted that driving on to
the center line of the road supports an officer's probable cause
to believe a violation of O.C.G.A. § 40-6-48 has been committed,
the court cited to Acree and Semich in support of that conclusion.
Diaz-Fonseca, 2013 WL 3147903, at *6.   As mentioned above, the
courts in both Acree and Semich considered the issue under the
reasonable suspicion inquiry, as opposed to under the probable
cause standard.

11

After careful consideration, the Court reiterates Magistrate Judge Brill's findings and conclusions on these points.

**IV.** **Conclusion**

For the reasons above, Defendant's objections to the R&R [Doc. 37] are OVERRULED, and the R&R [Doc. 31] is ADOPTED as to its ultimate recommendations.   As a result, Defendant's oral motion to suppress dated February 1, 2013 is DENIED.   Defendant's perfected motion to suppress evidence from the traffic stop [Doc. 14] is also DENIED, and Defendant's motion to suppress statements made in custody [Doc. 15] is DENIED AS MOOT.

SO ORDERED this ꝗ꘡ day of October, 2013.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

12